[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Raymond Baldyga, Jr. of Easton, Connecticut from the assessment of damage in the amount of $26,000 filed by the defendant, West End Community Development Corporation (WECDC) for the taking of the plaintiff's property located at 98-102 Andover Street, Bridgeport.
The property, a three story frame apartment building, originally consisting of six units, was purchased by the plaintiff on March 19, 1996 for $1,000, because of its poor condition. The plaintiff who had considerable construction experience, proceeded to rehabilitate the units, transforming the dwelling into five units, consisting of two units on the first floor, each consisting of two bedrooms and bath; two apartments on the third floor, also consisting of two bedrooms and bath; and six rooms on the second floor, consisting of four bedrooms and bath.
Testimony was introduced by two appraisers. Frank Brennan testified on behalf of the plaintiff Baldyga. Roy O'Neil testified on behalf of the defendant, WECDC.
The court finds the taking date of the property to be August 18, 1997, which was the date of filing of the statement of compensation ($26,000) in the Superior Court, Bridgeport. At the hearing, there was a minor dispute as to the date of taking, the defendant claiming that the date should have been found to be February 10, 1998, the date on which the certificate of taking CT Page 15107 was recorded. For reasons stated in the plaintiff's brief, the court finds August 18, 1997 to be the date of taking.
It would serve no useful purpose to recount in detail the opinions of the respective appraisers.
Suffice it to say that Frank Brennan, plaintiff's appraiser, testified that the only reasonable approach to the estimate of damages due to this taking was the income approach, having been unable to find a three story, frame, five or six family apartment sold in 1995, 96 or 97, particularly one that was in the process of being rehabilitated. The third possible approach, the replacement cost approach, was rejected summarily because the cost could not justify the excessive amount because rents could not support such amount.
Using the capitalization of income approach, Brennan found that total monthly rentals for the plaintiff's property amounted to $1,400 or $16,800 annually based on monthly rentals of $250 for each of two bedroom units and $400 for the six unit apartment. He deducted expenses totaling $6,421 from the gross annual rental, leaving a net annual rental of $9,549. This figure he capitalized at 10% (rate of return), arriving at a figure of damage to the subject property of $95,490. Brennan's appraisal report was dated July 27, 1998, and his estimate of damages applied to the effective date of August 18, 1997.
Defendant's appraiser, Roy O'Neil filed three reports. The first listed damages of $26,000 as of the date of October 1, 1996. He freely admitted that his opinion was based solely on an exterior inspection. He used both the comparable sales and income approach. In his income approach he did not use actual rentals, but rentals for three two bedroom apartments based on average market rental data. He was thus able to arrive at potential gross annual income of $19,800, based on potential monthly rentals of $550 for each three units. Not having inspected the interior he was unaware that there were four two bedroom units and one four bedroom unit. He testified that the president of WECDC told him there were only three two bedroom units on the premises. Deducting what he considered appropriate expense items, he arrived at a net income of $3,080 which he capitalized at 11.7%, arriving at a damage opinion of $26,000.
O'Neil filed his third report on November 7, 1998, revising his opinion of "damage" as of the date of taking to be $44,000. CT Page 15108 In this third report, based on information and interior photos presented in the Brennan report, indicating that he was now aware that the building was partitioned as five units instead of three, and that based on facts concerning the interior as presented in the Brennan report, the interior condition would be rated as superior to the exterior condition. He still did not inspect the interior. He now presented his income approach based on actual gross rentals of $16,800, the same as Brennan. However, he disputed Brennan's expense items and arrived at a net operating income figure of $5,613. Using the same capitalization figure of 11.7%, he arrived at a rounded figure of "damages" due to the taking of $48,000.
O'Neil also used the comparable sales approach, having found a sale on March 24, 1997 of property at 123 Madison Avenue in the amount of $70,000, said property consisting of six apartments. He made what he considered proper adjustments, arriving at an adjusted sale price of $39,375, rounded to $40,000. He then averaged the income approach figure of $48,000 and the sales comparison figure of $49,000 arriving at an opinion of "damages" for subject property in the amount of $44,000.
O'Neil filed a second report June 1997, which, based solely on comparative sales, duplicated his first report of $26,000. In view of O'Neil's third report, the first and second reports become immaterial.
In arriving at its decision, the court is considerably more impressed with Brennan's report and testimony than with O'Neil's. In his analysis based on the income approach, Brennan used actual rentals which were below market figures. He took minimum deductions for expense items such as vacancies because they didn't exist; such as management, because he was the manager, being in constant attendance, making repairs, collecting rent and overseeing his investment. In view thereof, Brennan used a management deduction of 3% and vacancy deduction of 2%.
On the other hand, O'Neil did not use actual rental figures until his third report, and then, only because he found them in Brennan's report. He never inspected the interior of the property and only appreciated Balydyga's rehabilitation work through photographic illustrations he saw in the Brennan report. For deductions for Management and vacancy items, he used market averages of 8% and 15%, ignoring Baldyga's complete devotion to the property and the dearth of vacancies. It is most interesting CT Page 15109 that in his first report, he used vacancy and management figures of 30% and 6%. To be consistent, O'Neil should have used average market data as to rentals, which, based on information in his report, would being his total gross income up to $28,116, and net operating income up to $11,390, which, at his capitalization rate of 11.7%, would raise his market value of subject property to more than Brennan's.
Finally, the court should comment on O'Neil's sales comparison approach. He followed one alleged comparable sale at 123-129 Madison Avenue in Bridgeport. This sale was for $70,000 on March 24, 1997 and by adjusting for varius items, he arrived at a value for subject property of $39,375, rounded to $40,000. The court rejects this property as a comparable sale, it being located approximately two miles from subject and certainly not in the process of rehabilitation.
Giving Mr. O'Neil the benefit of his capitalization rate of 11.7% imposed on Mr. Brennan's income analyses, the court finds the fair market value of the plaintiff's property at 98-102 Andover Street in Bridgeport on the date of taking to be $81,615. The defendant has filed a deposit in court of $26,000, withdrawn by the plaintiff. Wherefore, it is adjudged that damages are payable to the plaintiff in the amount of $55,615 from the date of taking to the date of payment, together with interest at the statutory rate of 10% and together with an appraisal fee of $4,750 and fee for testifying in the amount of $750.00.
Belinkie Judge Trial Referee